UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY LEE KISSINGER,

        Petitioner,

                                      Case No. 4:04-CV-101
v.                                      Hon. Wendell A. Miles

TERRY PITCHER,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has

filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

### Background

The Michigan Court of Appeals summarized the facts of this case as follows:

Defendant was convicted of armed robbery following a hold-up at gunpoint of an elderly woman, who lived with her husband in a mobile home park in St. Joseph County. The woman was awakened at approximately 4:20 a.m. on September 25, 1997, to find an intruder standing in her bedroom doorway. Her husband was sleeping. The intruder had a gun and demanded money. After the woman gave the intruder more than $150 from her purse, the man ordered the couple to remain in bed, covered up, while he escaped or he would shoot them.

Defendant was subsequently arrested and confessed to the robbery. Before trial, he moved to have his confession suppressed on the ground that it was involuntary. Following a *Walker*[FN1] hearing, the trial court denied defendant's motion. Defendant was convicted as charged.

FN1. *People v. Walker (On Rehearing),* 374 Mich. 331, 338 (1965).

*People v. Kissinger,* No. 225193 (Mich. App. Sept. 24, 2002), slip op. at 2-3.

The jury convicted petitioner of armed robbery, M.C.L. § 750.529, and possession of a firearm during the commission of a felony, M.C.L. § 750.227b.  He was sentenced as a habitual offender, fourth offense, M.C.L. § 769.12, to twenty-seven to fifty years' imprisonment for the armed robbery conviction and a consecutive two-year term for the felony-firearm conviction.

Petitioner filed a claim of appeal on October 28, 1999, but the claim for appeal was dismissed for lack of jurisdiction because it was filed prior to the disposition of petitioner's motion for new trial.  A properly filed appeal was received in the Michigan Court of Appeals on November 9, 2000.  This appeal raised the following five issues.

I.      Was petitioner's statement to the police involuntary and should it have been suppressed because it was the product of threats made against his wife while petitioner was suffering from clinically diagnosed dysthymia (depression), post traumatic stress syndrom [sic], alcohol and drug abuse, and alcohol and nicotine withdrawal?

II.      Should petitioner's statements to the police have been suppressed because at the time of the interrogation he was illegally detained and should have been free on bond?

III.      Was petitioner denied his constitutionally guaranteed right to present a defense where the trial court excluded evidence of the circumstances surrounding the voluntariness of his statement?

IV.      Was it clear error for the trial court to deny petitioner's motion for rehearing on the motion to suppress statement and quash the information, and the motion for a new trial?

V.      Must petitioner's conviction be reversed where he was denied his state and federal constitutional right to a speedy trial where he was not brought to trial until approximately fourteen months after his arrest?

The Michigan Court of Appeals affirmed petitioner's conviction.  *Kissinger*, No.

225193.  Petitioner filed a delayed application for leave to appeal to the Michigan Supreme Court

raising the same five issues presented to the Court of Appeals.  The Michigan Supreme Court denied

petitioner's delayed application for leave to appeal.  *People v. Kissinger*, No. 122688 (Mich. April

29, 2003).  Petitioner has now raised the following two issues in his petition for federal habeas

corpus relief:

> I.   Petitioner's statement to the police was involuntary and should have been
>      suppressed because it was the product of threats made against his wife while
>      petitioner was suffering from clinically diagnosed dysthymia (depression),
>      post traumatic stress syndrom [sic], alcohol and drug abuse, and alcohol and
>      nicotine withdrawal.
>
> II.  The trial court's summary exclusion of a material defense witness and
>      evidence impaired petitioner's right to raise a defense to the charges. [issue
>      III from the state appellate courts.]

## Discussion

### I.   Standard of Review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254(a) which provides that:

> a federal district judge shall entertain an application for a writ of habeas corpus in
> behalf of a person in custody pursuant to the judgment of a State court only on the
> ground that he is in custody in violation of the Constitution or laws or treaties of the
> United States.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus

review is limited by the Antiterrorism and Effective Death Penalty Act of 1996, which provides in

pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted

3

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Pursuant to 28 U.S.C. § 2254 (e)(1):

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

This presumption of correctness also applies to the factual findings made by a state appellate court based on the state trial record. *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

## II.    Exhaustion

Before a state prisoner may seek habeas relief in federal court, he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270 (1971); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir. 1994); *Rust v. Zent,*17 F.3d 155, 160 (6th Cir. 1994).    Petitioner raised both of his federal habeas corpus claims to the Michigan Court of Appeals and the Michigan Supreme Court. Therefore, petitioner has exhausted these two issues.

4

### III.     Petitioner's Habeas Corpus claims

### A.     Voluntariness of Petitioner's Confession

First, petitioner contends that his confession should have been suppressed because it was involuntary given the circumstances surrounding his interrogation.  The Michigan Court of Appeals addressed this claim as follows:

> Defendant first argues that the court erred in denying his motion to suppress his confession because the confession was involuntary. Further, any error is not harmless because the confession was the only evidence linking defendant to the crime.

> We review a trial court's findings of fact following a suppression hearing for clear error. *People v. Givans,* 227 Mich.App 113, 119; 575 NW2d 84 (1997). We review de novo a trial court's conclusions of law. *People v. Snider,* 239 Mich.App 393, 406; 608 NW2d 502 (2000).

> When reviewing a trial court's determination of voluntariness, this Court must examine the entire record and make an independent determination of the issue. *People v. Sexton (After Remand),* 461 Mich. 746, 752; 609 NW2d 822 (2000). However, this Court will affirm the trial court's determination unless left with a definite and firm conviction that a mistake was made. *Id.* If resolution of a factual question hinges on the credibility of the witnesses or the weight of the evidence, we will defer to the trial court, which is in a superior position to evaluate these matters. *Id.*

> Whether a statement is voluntary is determined by the totality of the circumstances. *People v. Manning,* 243 Mich.App 615, 635; 624 NW2d 746 (2000); *Snider, supra* at 417. The test is whether the confession was the product of an essentially free and unconstrained choice, or whether the accused individual's will was overborne and the capacity for self-determination critically impaired. *Manning, supra* at 635. In *People v. Cipriano,* 431 Mich. 315, 334; 429 NW2d 781 (1988), the Court set out various factors for determining whether a statement was voluntary: the age of the accused; the lack of education or intelligence level; the extent of previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before the magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the

5

statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. *Manning, supra* at 635.

Defendant claims that his confession was involuntary because it was the product of an alleged threat by the interrogating officer, Deputy Kennedy, and because of defendant's unstable physical and mental state. Defendant contends that Kennedy threatened to arrest defendant's wife in connection with the crimes if defendant did not cooperate, and that, at the time, defendant was suffering from depression, post traumatic stress syndrome, alcohol and drug abuse, and alcohol and nicotine withdrawal.

With respect to the alleged threat, the trial court determined as a matter of fact that defendant did not confess because of the alleged threat. The court found Kennedy's testimony credible, finding that Kennedy did not improperly threaten to arrest defendant's wife. Even had defendant perceived such a threat, the court found defendant's assertions of coercion implausible and unlikely to be true. After an extensive analysis, the court determined that defendant's actions following his confession were inconsistent with his claims, but that his actions were not inconsistent with the ability to exercise free will. Giving deference to the court's findings of fact, which are not clearly erroneous, we conclude that defendant's confession was not the result of a coercive threat sufficient to render the confession involuntary.

We likewise find no clear error in the court's conclusion that defendant's physical and psychiatric state did not render him incapable of acting voluntarily. While a defendant's physical and mental state is a factor to be considered, no one factor is determinative. *People v. Fike,* 228 Mich. App. 178, 181-182 (1998). This Court has previously ruled that the fact that a person is under the influence of drugs is not dispositive of the issue of voluntariness. See *People v. Feldmann,* 181 Mich.App 523, 530-531; 449 NW2d 692 (1989). "[A] deficiency in the defendant that is not exploited by the police cannot annul the voluntariness of a confession unless there is evidence of police coercion." *Fike, supra* at 182. Further, credibility is appropriately determined by the trial court; a trial court is not required to believe a defendant's assertion that he was suffering from drug-related distress at the time of a confession. *People v. Smith,* 80 Mich.App 106, 109, 112; 263 NW2d 306 (1977).

In this case, the record does not support that defendant exhibited, or that Kennedy observed, signs of distress as the result of substance withdrawal or psychiatric ailments. The record also does not support that Kennedy took advantage of any alleged physical or mental deficiency. Defendant was on his proper medication and was not under the influence of any intoxicants. The record supports that he was able to understand the conversation and coherently participate. The trial court did not

6

clearly err in finding that this factor did not render defendant unable to exercise his free will.

Further, as the court noted, defendant's own expert testified that if there was no threat against defendant's wife, his confession may have been voluntary. The court found no credible evidence of a threat. Any physical or mental distress suffered by defendant was insufficient, by itself, to support that his confession was involuntary.

Reviewing the totality of the circumstances and giving deference to the trial court's findings of fact, we affirm the determination that defendant's confession was voluntary and admissible, given the factors in *Cipriano, supra.* Defendant was nearly thirty-eight years old at the time of the crimes. He had a GED and could read and write. He had extensive prior experience in dealing with the police and with respect to the criminal system. The questioning by Kennedy took place for a short time in the back of a police car on September 26, 1997, and for approximately one hour and five minutes on the evening of the confession at issue. Thus, there was no repeated or prolonged questioning. Defendant was being detained on matters in Kalamazoo at the time of his confession. Thus, he was not being detained pending questioning or a confession on the St. Joseph County matters. Defendant acknowledged that he was advised of his *Miranda*[FN2] rights and signed a waiver card. He was not injured at the time of the questioning that led to his confession and there was no evidence that he was deprived of food, sleep or medical attention. In fact, defendant was receiving his Prozac on a regular schedule unlike before his arrest. Further, there was no evidence of physical abuse or a threat of physical abuse.

FN2. *Miranda v. Arizona,* 384 U.S. 436 (1966).

*Kissinger,* No. 225193, slip op. at 2-3.

## 1.   Standard of review for voluntariness of confession

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions against the accused. *Jackson v. Denno,* 378 U.S. 368, 376 (1964); *Finley v. Rogers,* 116 Fed. Appx. 630, 635 (6th Cir. 2004). The voluntariness of a confession is a mixed question of law and fact. *Thompson v. Keohane,* 516 U.S. 99, 108-11. "The ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a

7

matter for independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). However, "subsidiary factual questions, such as...whether in fact police engaged in the intimidation tactics alleged by the defendant 'are entitled to the presumption of correctness.'" *Id.* (applying predecessor to § 2254(e)).

### 2. Petitioner has not rebutted the trial court's finding that Deputy Kennedy did not make a threat against his wife

As an initial matter, petitioner contends that the trial court erred in refusing to suppress his confession as involuntary because his interrogator, Deputy Kennedy, threatened to arrest his wife if he did not confess. The trial court determined as a matter of fact that Deputy Kennedy did not make an improper threat to arrest petitioner's wife to induce him to confess.

> The court agreed with Dr. Esch [petitioner's psychiatrist] at hearing that if defendant were told his wife would be arrested, the confession would be involuntary, both as a matter of fact as well as a matter of law.

> The court however after significant review, analysis, and reflection...does not believe defendant's testimony. The court disbelieves that Deputy Kennedy told defendant that if he (defendant) did not cooperate that Deputy Kennedy would arrest defendant's wife.

*People v. Kissinger*, St. Joseph Cir. Ct. Case No. 97-8746, slip op. at 18-9 (Jan. 12, 1999).

Petitioner has not rebutted the trial court's finding that Deputy Kennedy did not make the threat against his wife. This determination is a factual finding entitled to a presumption of correctness. See § 2254(e)(i). Rather than rebutting by clear and convincing evidence, petitioner has merely attempted to relitigate the trial court's findings of fact on this issue. Accordingly, the court will accept the trial court's finding that Deputy Kennedy did not threaten to arrest petitioner's wife and ignore the factual assertions in the petition that are inconsistent with this fact. See, e.g., *Jenner v. Smith*, 982 F.2d 329, 331 (8th Cir.1993).

### 3. Petitioner's confession was voluntary under the totality of the circumstances

Petitioner contends that his confession was involuntary under the totality of the circumstances in this case.  As an initial matter, petitioner states that the Michigan constitution forbids the use at trial of involuntary confessions.  To the extent that petitioner relies on Michigan law, such reliance is not relevant to a federal habeas petition because federal habeas corpus relief does not lie for errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

The trial court determined the facts relating to the circumstances surrounding petitioner's confession in the following excerpt from its opinion:

> Following Deputy Kennedy's discovery on September 30, 1997, that defendant's freezer contained a pizza which the officer was about to connect to another crime (other than the one he had originally on September 26 questioned defendant about), he decided to requestion the defendant.  After defendant had been asleep for a few minutes, he was awakened by a jailor at the Kalamazoo County jail. Defendant testified that he was tired and not fully awake when the interview commenced.  However, defendant did not dispute that he was again advised of his Miranda rights and agreed to talk to Deputy Kennedy.
>
> Thereafter, defendant offered to Deputy Kennedy various explanations regarding how the pizza could have arrived in his freezer, but consistent with his denial of guilt.  Deputy Kennedy, based upon the additional information he had learned from this investigation, was able to refute - and did so - each explanation defendant offered.  Counsel argued that this conversation was adversarial.  That that is so, does not render it unlawful.  There is no indication that the officer used a threatening tone of voice, raised his voice, or behaved in a physically intimidating manner.  Conversely, the fact that the defendant continued to deny his guilt and suggest alternative explanations - while perhaps not consistent with the information Deputy Kennedy had gleaned from other sources - suggests that defendant's will remained strong.  This process continued from approximately 11:15 until shortly after midnight.

9

There is nothing in this account which would render anything which the defendant offered the officer involuntary. Accordingly, the court concludes that the pre-confession conversation is admissible.

*Kissinger*, No. 97-8746, slip op. at 14-5.

The trial court continued:

Defendant testified that he regularly smoked 2 packages of cigarettes per day prior to his arrest, and had been using alcohol, marijuana, and crystal meth the month prior to his arrest. His last cigarette was Friday evening after he was arrested on September 26, 1997. His last usage of alcohol and marijuana was the same date. Defendant testified he was suffering on September 30 from alcohol and nicotine withdrawal.

Defendant completed the 11th grade and earned a GED certificate. He earned average grades in school. He acknowledged he had experience in the criminal justice system having been "Mirandized" and interrogated previously as well as having been convicted and served a prison sentence.

Dr. Brian Esch, a psychiatrist, testified that defendant suffered from depression, dysthymic disorder, and post-traumatic stress disorder, which Dr. Esch testified impaired defendant's ability to concentrate or form appropriate coping mechanisms to stress.

*Id.*, slip op. at 17-8.

Later in its opinion, the trial court rejected petitioner's claim that Deputy Kennedy's alleged threat, his mental problems, and his alleged alcohol and nicotine withdrawals rendered his confession involuntary.

As noted earlier, the court agreed with Dr. Esch that the confession would be involuntary if defendant were actually threatened with his wife's arrest. Without that threat in the equation, the court is unimpressed with the defendant's claims that alcohol and nicotine deprivation reduced his ability to deal with stress. The court disagrees that after four days in custody these factors were operative in rendering defendant unable to exercise free will.

The psychiatric diagnoses do not alter the court's opinion. The court is accustomed to dealing with defendants with serious substance abuse issues. The court's impression of defendant was that he was no stranger to addictive and

manipulative behavior, similar to many other defendants, except that he was
backed by sufficient resources to obtain a medical diagnosis for his mental health
issues.

*Id.*, slip op. at 45-6.

On appeal, petitioner also contended that his confession should be suppressed

because at the time it was rendered he should have been free on bond.  The Michigan Court of

Appeals addressed that claim, which is not at issue in this court, as follows:

> Defendant next argues that his statements to the police should have been
> suppressed because at the time of the interrogation he was illegally detained
> and should have been free on bond. We disagree.
>
> When reviewing the denial of a request to suppress a confession, this Court
> reviews the record de novo, but the trial court's factual findings are reviewed
> under the clearly erroneous standard. *People v. Adams,* 245 Mich.App 226,
> 230; 627 NW2d 623 (2001). The trial court's finding that there was no causal
> nexus between defendant's delayed release on bond and his confession was not
> clearly erroneous.
>
> Our courts have consistently recognized that where there is an illegal
> detention, whether resulting from a statutory or constitutional violation, the
> exclusionary rule operates to suppress evidence only if there is a nexus
> between the unlawful detention and the procurement of the evidence. See
> *People v. Mallory,* 421 Mich. 229, 239-243; 365 NW2d 673 (1984) (statutory
> right to prompt arraignment); *People v. Kelly,* 231 Mich.App 627, 633-634;
> 588 NW2d 480 (1998) (illegal arrest); *People v. Feldmann,* 181 Mich.App
> 523, 528-531; 449 NW2d 692 (1989) (violation of the right against self-
> incrimination and the prompt arraignment statute); *People v. Jordan,* 149
> Mich.App 568, 577-578; 386 NW2d 594 (1986) (unlawful detention of a
> juvenile). Whether the connection between an unlawful detention and a
> confession is sufficiently attenuated to purge the primary taint depends on: 1)
> the temporal proximity between arrest and confession, 2) the flagrancy of the
> official misconduct, 3) any intervening circumstances occurring after arrest,
> and 4) any circumstances antecedent to arrest. *Feldmann, supra* at 529.
>
> The trial court, applying the above exclusionary rule considerations, concluded
> that there was no causal nexus between the detention and the confession. This

finding is not clearly erroneous. Defendant's statements to Kennedy were made more than twenty-four hours after his bond was posted and the Kalamazoo authorities determined that defendant would not be released. That defendant's confession was not close in time to the decision to hold defendant supports the conclusion that the unlawful detention was not the result of a desire to allow Kennedy to question defendant.

Moreover, the conduct of the Kalamazoo authorities was not flagrant misconduct. The Sheriff believed, albeit incorrectly, that the bond requirements had not been met. His actions in contacting the tether agent support this conclusion. The record does not indicate that Kennedy or any authority from St. Joseph County participated in the decision to detain defendant after bond was posted.

Defendant argues that, but for the unlawful detention, Kennedy would not have obtained the confession. However, there was no evidence that anyone, including defendant, understood that he was being unlawfully detained at the time of Kennedy's interview. It cannot be said that defendant's confession was obtained by exploiting the illegal detention, about which no one was aware at the time. The trial court was not required to suppress the statement on the ground that it was the product of an unlawful detention.

*Kissinger,* No. 225193, slip op. at 4-5. [footnote omitted]

Under clearly established Supreme Court law, "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *McCalvin v. Yukins*, 444 F.3d 713, 719 (6th Cir. 2006), quoting *Miller,* 474 U.S. at 109. The question is whether a defendant's will was overborne at the time he confessed, which requires the Court to look at the totality of the circumstances surrounding the confession. *McCalvin*, 444 F.3d at 719; *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973); *Reck v. Pate,* 367 U.S. 433, 440 (1961). The "totality of all the surrounding circumstances" refers to both the characteristics of the accused and the details of the interrogation. *Dickerson v. United States*, 530 U.S. 428,  434 (2000);  *United States v. Mahan*,

12

190 F.3d 416, 422 (6th Cir.1999).

A non-exhaustive list of the factors applied in determining the "totality of the circumstances" includes: (1) the "crucial element of police coercion," (2) the youth of the accused, (3) his lack of education, (4) his low intelligence, (5) the lack of any advice to the accused of his constitutional rights, (6) the length of detention, (7) the repeated and prolonged nature of the questioning, (8) the use of physical punishment such as the deprivation of food or sleep, (9) the location of the interrogation, (10) the defendant's maturity, (11) physical condition, and (12) mental health. *Withrow v. Williams*, 507 U.S. 680, 693 (1993); *Schneckloth*, 412 U.S. at 226. Additionally, according to *Colorado v. Connelly*, 479 U.S. 157, 164-5 (1986),

> Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law...as interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the "voluntariness" calculus. See *Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional "voluntariness"...while mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry.

*Connelly*, 479 U.S. at 164-5.

Based upon the totality of the circumstances in this case, it was objectively reasonable for the Michigan Court of Appeals to hold that petitioner's confession was voluntary. Petitioner is a grown man who has earned a GED and can read. He is an ex-convict, familiar with the criminal justice system, who has previously been issued his Miranda rights before being interrogated by police. The fact that he signed a Miranda card prior to his interrogation evidences that he was

advised of his constitutional rights in this instance as well. See *Berkemer v. McCarty*, 468 U.S. 420, 433 (1984) ("Cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare").  Petitioner was subjected to a relatively short interrogation, being questioned for little over an hour.

Petitioner had already served a prison sentence prior to his arrest and therefore was not unaccustomed to being incarcerated.  Therefore, it is not likely that location of the interrogation, the jail, played any significant role in petitioner's confession.  Furthermore, a jail is not an unreasonable setting to conduct an interrogation and under the circumstances, it was the most practical location available.  Petitioner also argued that Deputy Kennedy's tactics in obtaining the confession were adversarial, but the trial court determined that they were not unreasonable.  The trial court found that Kennedy merely informed petitioner that his wife was a suspect in the arson case and mentioned that she might be arrested if she had any involvement in the crime.  See *McCalvin*, 444 F.3d at 721 ("We are not prepared to forbid police from conveying to suspects the seriousness of the crime for which they are being investigated").

The trial court noted that even if the conversation between Kennedy and petitioner were adversarial, "there is no indication that the officer used a threatening tone of voice, raised his voice, or behaved in a physically intimidating manner." *Kissinger*, No. 97-8746, slip op. at 15.  The lack of evidence of coercive conduct by Kennedy suggests that even if he subjected petitioner to repeated questioning, such questioning was not unreasonable.  While petitioner should have been free on bond and thereby was being detained unlawfully during the interrogation, *Kissinger,* No. 225193, slip op. at 4, he does not raise this issue in his habeas petition.  Accordingly, petitioner

14

apparently concedes the findings of the trial court, which were affirmed by the Court of Appeals, that there was "no causal nexus between the detention and the confession," as neither petitioner, nor apparently anyone else involved, realized that he was being held illegally. *Id.* Therefore, it does not appear that the unlawful extension of petitioner's detention influenced his decision to confess.

Petitioner contends that the fact that he had abused alcohol and drugs contributed to his inability to voluntarily render a confession. Petitioner may very well have been suffering from withdrawal due to both his drug, alcohol, and nicotine addictions and the fact that he had not consumed any of the aforementioned substances in the four days following his arrest. The four-day period of incarceration prior to his interrogation, however, allowed petitioner an opportunity to become sober. See *Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004) (Defendant's incriminating statements were voluntary despite the fact that his taped interview had to be stopped briefly because he was "vomiting from the effects of the previous night's alcohol"). This period of detoxification also gave petitioner time to review and reflect on the charges he faced and how he wanted to respond to them, before being questioned by police. Furthermore, as the Court of Appeals notes, petitioner had taken his Prozac regularly directly prior to rendering the confession, unlike before his arrest when he had taken such medication relatively erratically.

Petitioner's claim that his confession was due to his tendency to "become passive and give up" when confronted with stress conflicts with the trial court's holding that petitioner's will remained strong throughout the interrogation. Petition at 16. If "giving up" is read to mean that he gave a false confession when he finally confessed, this court finds persuasive the trial court's reasoning:

15

"If [petitioner's] fear was so strong as to compel him to make a false confession, where then was the fear, when, shortly after confessing, he was willing to reassert his innocence and disavow the confession?"

*Kissinger*, No. 97-8746, slip op. at 27.

Petitioner contends that at the time of the interrogation, approximately 11:15 p.m., he "had been sleeping and was tired." Petition at 21. Petitioner had only been asleep for a few minutes, however. Furthermore, it does not appear that the timing of the interrogation in this case was unreasonable, nor is there evidence that petitioner was deprived of food or that physical punishment was used in any way.

In his habeas petition, petitioner claims that his psychological problems rendered him unable to exercise free will. He quotes his psychiatrist as saying that "the confession in that case, with this individual, under those circumstances, was less than voluntary." Petition at 21. What is meant by "under those circumstances," however, considers only the ability of a person with petitioner's mental deficiencies to voluntarily render a confession after being threatened by his interrogator that his wife would be arrested if he did not confess. Since the trial court explicitly found that such a threat was not made, this conclusion made by Dr. Esch was not well-taken. We defer to the sound discretion of the trial court, being in a better position to evaluate the effect of petitioner's diagnosed mental deficiencies, that such deficiencies did not affect the voluntariness of his confession. Consequently, the various psychological pressures allegedly placed on petitioner were not so great as to render him unable to exercise free will.

Therefore, given the totality of the circumstances in this case, we uphold the state court's finding that petitioner's confession was voluntary. The Michigan Court of Appeals'

16

resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.  See *McCalvin*, 444 F.3d at 720 (Petitioner's will was not overborne even though she "had no experience with jail or interrogation; [she] was interrogated for four hours; the detectives repeated the same questions several times until [petitioner] confessed; two different teams of detectives were used; and [one detective] stated that [petitioner] would not have contact with her children if convicted of first degree murder"); *Williams v. Jones*, 117 Fed. Appx. 406, 411 (6th Cir. 2004) (a 15-year-old boy possessing only a ninth grade education and being inexperienced with the police and allegedly high on marijuana at the time of his confession understood his *Miranda* rights and voluntarily waived them prior to custodial interrogation); and *Finley*, 116 Fed. Appx. at 636 (petitioner denied habeas relief even though she was 59 years old, she claims she was offered leniency in exchange for a confession, and her house was searched for eight hours before she was brought to the police station).

### B.    Exclusion of Witness and Evidence

In his second habeas claim, petitioner contends that "it was clearly erroneious [sic] for the trial court to exclude the testimony or evidence surrounding petitioner's involuntary and coerced statements."  Petition at 27.  The Michigan Court of Appeals addressed this claim as follows:

> Defendant next argues that he was denied his constitutional right to present a defense where the trial court excluded evidence of the circumstances surrounding the voluntariness of his statement. We disagree.

The decision whether to admit evidence is within the discretion of the trial court. *People v. Aldrich,* 246 Mich.App 101, 113; 631 NW2d 67 (2001). This Court will not disturb a trial court's decision with respect to the admission of evidence absent a clear abuse of discretion. *Id.*

Defendant sought to introduce evidence refuting Kennedy's testimony that on September 29, 1997, he visited defendant at the Kalamazoo County jail and advised him of his rights and defendant signed a *Miranda* card. The trial court ruled that the proffered, extrinsic evidence was inadmissible. Further, defendant could inquire into the veracity of Kennedy's testimony with respect to the September 29, 1997, *Miranda* card and jail visit, but would not be allowed to refute or disprove those answers with any extrinsic evidence to impeach Kennedy's credibility because the matters concerning September 29 were collateral.

MRE 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness ....

"Extrinsic evidence may be used to impeach a witness [only] on a material, as opposed to collateral, matter." *People v. Sutherland,* 149 Mich.App 161, 164; 385 NW2d 637 (1985). In other words, while a party may contradict answers elicited from a witness on cross-examination, he may only do so regarding matters germane to the issue and not with respect to collateral, irrelevant or immaterial matters. *People v. Vasher,* 449 Mich. 494, 504; 537 NW2d 168 (1995). "The purpose of the rule that a witness cannot be impeached on a collateral matter by use of extrinsic evidence is to avoid the waste of time and confusion of issues that would result from shifting the trial's inquiry to an event unrelated to the offense charged." *People v. Guy,* 121 Mich.App 592, 604; 329 NW2d 435 (1982).

Whether Kennedy visited defendant and obtained defendant's signature on the *Miranda* card on September 29, 1997, was a collateral matter although it was related to Kennedy's general credibility. MRE 608(b); *Guy, supra* at 604- 605. The matter did not fit within any of the categories of noncollateral facts. *Id.* Here, the entire jury trial, excluding jury selection, occurred over a period of less than two full days. The trial court correctly recognized that the testimony defendant sought to admit, including complicated, expert handwriting testimony, would have taken at least

> another day or day and a half of trial time, elevating its importance far beyond the mere impeachment on a matter that related only to credibility and not to the substantive issue in the case. Defendant was not prohibited from presenting a defense, but only from injecting the truth or falseness of a collateral issue into the trial.

*Kissinger,* No. 225193, slip op. at 4-5.

A defendant in a criminal trial has the due process right to present a defense comprised of his own version of the facts. *Washington v. Texas*, 388 U.S. 14, 19 (1967). The right to due process is exemplified by the defendant's right to present and to compel, if necessary, witnesses in court. *Id.* A defendant's right to present a "complete" defense does not, however, automatically trump state evidentiary rules. *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003). Indeed, while criminal defendants are afforded fundamental due process rights such as the right to present a defense,

> [A] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process. As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve.

*U.S. v. Scheffer*, 523 U.S. 303, 308 (1998) [citations and internal quotations omitted].

The Supreme Court went even further in its 1986 opinion in *Crane v. Kentucky*, stating:

> We acknowledge also our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts. In any given criminal case the trial judge is called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence...The Constitution leaves to the judges who must make these decisions wide latitude" to exclude evidence that is "repetitive...,

> only marginally relevant" or poses an undue risk of "harassment, prejudice, [or] confusion of the issues." *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)...The opportunity [to be heard] would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence.  In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing." *United States v. Cronic,* 466 U.S. 648, 656 (1984). See also *Washington,* 388 U.S.at 22-23.

*Crane*, 476 U.S. at 689-691.

Petitioner contends that Deputy Kennedy's testimony from the *Walker* hearing relating to his supposed visit to the jail on September 29, 1997 was untrue.  Kennedy claimed to have read petitioner his rights and presented him with a *Miranda* card which petitioner purportedly signed. Petitioner alleges that the signature on the *Miranda* card from that date was a forgery and that he attempted to introduce at trial testimony from a forensic expert that it was not in fact petitioner's signature.  Petitioner also contends that jail records he attempted to introduce at trial showed that Deputy Kennedy was not present at the jail on the day in question.  Petition at 25-7.  The trial court refused admit the aforementioned evidence, denoting such evidence as collateral.

The Constitution affords the states a relatively unrestrained degree of freedom to create their own restrictions on the admissibility of certain types of evidence in state court.  A federal district court can only void such rules as infringing on the defendant's right to present a defense if the rules are "arbitrary" or "disproportionate to the purposes they are designed to serve."  Petitioner's apparent purpose behind his attempt to have this evidence admitted was to diminish the credibility of Deputy Kennedy, whose testimony concerning the voluntariness of petitioner's confession the court found to be credible.  The reasoning behind the restrictive evidentiary rule that the trial court

employed in  this case was explained by the Michigan Court of Appeals, which stated:

> The decision whether to admit evidence is within the sound discretion of the trial court.  The purpose of the rule that a witness cannot be impeached on a collateral matter by use of extrinsic evidence is to avoid the waste of time and confusion of issues that would result from shifting the trial's inquiry to an event unrelated to the offense charged.

*Kissinger,* No. 225193, slip op. at 2-3.

The Court proceeded to explain the purpose behind the refusal to admit the testimony and other extrinsic evidence presented for admittance:

> The trial court correctly recognized that the testimony defendant sought to admit, including complicated, expert handwriting testimony, would have taken at least another day or day and a half of trial time, elevating its importance far beyond the mere impeachment on a matter that related only to credibility and not to the substantive issue in the case.

*Id.*

While a defendant's interest in presenting all the evidence he deems relevant or necessary to develop his case is taken into consideration, such an interest does not always yield to the discretion of the state court.  The preservation of judicial resources and the avoidance of confusing the jury are legitimate governmental concerns that are hardly "arbitrary."  The state courts determined that it would have been difficult to accomplish petitioner's purpose of proving a collateral issue without, at the same time, violating the policies established for the purposes of conserving judicial resources and maintaining the focus of the court.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

21

### IV.    Conclusion

I respectfully recommend that petitioner's habeas petition be dismissed. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  August 14, 2006                         /s/ Hugh W. Brenneman, Jr.
                                                Hugh W. Brenneman, Jr.
                                                United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).